Harold M. Hewell (Cal. SBN: 171210)
*hmhewell@hewell-lawfirm.com*
HEWELL LAW FIRM
105 West F Street, Second Floor
San Diego, California 92101
(619) 235-6854
(888) 298-0177 (f)

*Attorney for Plaintiff,*
*Jungryea Shin,*

**FILED**

SEP 0 7 2010

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATED DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

**BY FAX**

| | |
|---|---|
| **JUNGRYEA SHIN,** an individual, | Case No. |
| | **'10 CV 1 862 H    WVG** |
| *Plaintiff,* | **COMPLAINT FOR:** |
| | (1) **DISCRIMINATION:** |
| *v.* | (2) **HARASSMENT;** |
| | (3) **RETALIATION;** |
| | (4) **INTENTIONAL INFLICTION** |
| **BENIHANA INC.,** a Delaware | **OF EMOTIONAL DISTRESS;** |
| corporation, | **AND** |
| | (5) **WRONGFUL TERMINATION** |
| *Defendant.* | |
| | ***Jury Trial Requested*** |

1.     This is an action for damages to redress the deprivation of rights secured to Plaintiff by the California Fair Employment and Housing Act (hereinafter "FEHA"), Government Code § 12940, et seq.

2.     Plaintiff seeks to obtain relief against her former employer, the Defendant named herein and its agents and employees for subjecting Plaintiff to discrimination, harassment and/or retaliation on account of Plaintiff's sex, race, national origin and association. Plaintiff also seeks damages for wrongful termination. Additionally, Plaintiff

**ORIGINAL**

1  seeks compensatory and exemplary damages for discrimination, harassment, retaliation
2  and/or wrongful termination.

3        3.      This action is brought pursuant to the California FEHA, California
4  Government Code § 12940 et seq. Pursuant to said Act, Plaintiff filed timely charges of
5  discrimination regarding the acts and practices of Defendant alleged herein.

6        4.      The true names and capacities, whether individual, associate, corporate or
7  otherwise of Defendant Does 1 through 100 inclusive and each of them are unknown to
8  Plaintiff at this time who, therefore, sues said Defendant by such fictitious names.
9  Plaintiff will amend this complaint to state their true names and capacities when same
10 have been ascertained. Plaintiff are informed and believe and thereon allege, that each of
11 the Defendant designated herein as a Doe is responsible in some manner for the events
12 and occurrences herein described and is liable to Plaintiff for the damages as herein
13 alleged.

14       5.      Plaintiff alleges on information and belief that at all times relevant herein,
15 Defendant and Does 1 through 100, and their respective subsidiaries, affiliates, and other
16 related entities, as well as the employees thereof, were the agents, servants and
17 employees of each other, and at all times relevant herein, each was acting within the
18 purpose and scope of that agency and employment.

19       6.      Whenever reference in this Complaint is made to any act or transaction of
20 Defendant, such allegation shall be deemed to mean that the principals, officers,
21 directors, employees, agents, and/or representatives of Defendant committed, knew of,
22 performed, authorized, ratified and/or directed that act or transaction on behalf of
23 Defendant while actively engaged in the scope of their duties.

24       7.      All allegations herein are based on information and belief and/or are likely
25 to have evidentiary support after reasonable opportunity for further investigation and
26 discovery.

27                                   **I. PARTIES**
28       8.      At all times herein mentioned, Defendant Benihana Inc. (hereinafter

---

COMPLAINT FOR: HARASSMENT; RETALIATION; DISCRIMINATION; INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS; AND WRONGFUL TERMINATION
Page 2 of 16

"Benihana" or "Defendant") was a corporation duly organized and existing under and by virtue of the laws of the State of Delaware and doing business in the County of San Diego, with its current principal place of business located at at 8685 Northwest 53rd Terrace, Miami, Florida 33166, and is an employer as defined in Government Code § 12926(d). For purposes of diversity jurisdiction, Benihana may be considered a citizen of either Delaware or Florida.

9.    At all times mentioned, Plaintiff Jungryea Shin (hereinafter "Ms. Shin" or "Plaintiff"), is and has been a resident of the County of San Diego, and for purposes of diversity jurisdiction, may be considered a citizen of California.

## II. JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter presented by this Complaint pursuant to 28 U.S.C. § 1332(a) because the Plaintiff and Defendant are citizens of different states and Plaintiff contends that the value of the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

11.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business within, may be found in, and is subject to personal jurisdiction in this Judicial District.

## III. ADMINISTRATIVE EXHAUSTION/RIGHT TO SUE LETTER

12.    On or about September 5, 2009, the California Department of Fair Employment and Housing (hereinafter "DFEH") notified Plaintiff of Plaintiff's right to initiate legal proceedings on said charge of harassment, discrimination and retaliation on account of Plaintiff's sex, race, national origin and association.

13.    Plaintiff was employed by Defendant from 2004 until September 8, 2008, at which time Plaintiff's employment was terminated by Defendant.

14.    At all times herein mentioned, the acts and/or words constituting the discrimination, harassment and/or retaliation alleged herein occurred within one year prior to the filing of Plaintiff administrative accusation and charges with the Department of Fair Employment and Housing.

## IV. GENERAL STATEMENT OF BACKGROUND FACTS

15.     Ms. Shin began working for Benihana at its San Diego restaurant, located at 477 Camino Del Rio South, San Diego, California 92108 in 2003 at the age of 29. She was soon promoted to assistant manager.

16.     When Benihana opened its Carlsbad restaurant in 2004, located at 755 Raintree Drive, Carlsbad California 92011, Ms. Shin, who had moved to the U.S. from Korea as an adult, transferred to that location and began working there with the title of associate manager. She soon felt isolated from, and ostracized by, (both culturally and racially) the Japanese restaurant staff and management, as well as the Hispanic kitchen staff.

17.     In February 2005, Ms. Shin was sexually harassed by one of the kitchen staff, David Mendoza, who had waited outside for her in the parking lot after work, and had propositioned her, an advance she rejected. She reported the sexual harassment to her immediate supervisor, Kuino Abe, who dismissed it casually, stating to the effect that, "If there is a man that is in love with you, there is nothing you can do."

18.     Mr. Abe did not make a report of the incident and did not pass this information along to his superiors. He also failed to take any steps to prevent it from happening again. Although he made no report of the incident, her complaint to Mr. Abe became known among the employees, and in the following weeks, she was stalked and followed outside of work by Mr. Mendoza, who had harassed her, and her car was vandalized twice in the restaurant parking lot, causing damage in excess of $2,000.00.

19.     She then took steps to report the sexual harassment to a more senior supervisor. As a result of that complaint, an October 15, 2005, meeting was arranged for her, Sugo Kanai, the Benihana Regional Manager, and Mr. Abe. At the meeting, she related the harassment and other events, which she was certain were related. She also had written a letter dated October 14, 2005 to the Benihana corporate office in Florida relating these events.

20.     At that time, she was working 10 to 14 hours per day, seven days a week at

1  the restaurant. This, coupled with the harassment and related events, caused her severe
2  stress.

3       21.    Benihana purportedly investigated her claims and terminated Mr.
4  Mendoza, but not the person she had been told had damaged her car.

5       22.    She then became concerned that the termination of Mr. Mendoza would
6  lead him to harm her in some way, and she feared him. Beginning the first night after Mr.
7  Mendoza's termination, she began received threatening anonymous calls. Through the
8  telephone company, she tracked the source of the phone calls and was told they were
9  coming from a pay phone located on street where her apartment was located. Certain
10  that the calls were coming from Mr. Mendoza, and frightened for her safety, she reported
11  them to the Oceanside, California police department, which took no action, an officer
12  there telling her to "get over it and move on with your life."

13      23.    At or about this time, employees from the San Diego restaurant, who had
14  been fired as the result of being in the country illegally, were hired to work at the
15  Carlsbad restaurant, at least one of them under a different false Social Security number
16  he had used at the San Diego restaurant. Because Ms. Shin had previously raised the
17  legality of their employment as an issue, the re-hired (and still illegally in this country)
18  kitchen staff were openly hostile to her when they began working at the Carlsbad
19  restaurant. They often spoke about her in her presence in Spanish, which she did not
20  understand. However, it was clear to her that the comments were derogatory.

21      24.    On November 2, 2005, another employee told Ms. Shin that Mr. Mendoza
22  had been putting drugs of an unknown kind in the food he prepared for her to eat (the
23  employees were fed meals cooked by the kitchen staff while they were at work). Mr.
24  Mendoza was among the employees hired at the restaurant who were not legally in this
25  country.

26      25.    On November 5, 2005, Ms. Shin came home at night from work to find
27  that her apartment had been broken into and vandalized. She reported it to the police, as
28  well as the fact that she believed that Mr. Mendoza had committed the apartment break-

1  in and had vandalized it, but the investigation was minimal and the police did not
2  implicate Mr. Mendoza.

3      26.    On March 12, 2006, Ms. Shin became seriously ill from the long work
4  hours, the extreme stress arising from the harassment, subsequent related events, and
5  having been ostracized by the Japanese management and restaurant staff, as well as the
6  Hispanic kitchen staff. Both groups considered her to be a "troublemaker" because she
7  tried to enforce the rules and perform her duties as directed by Benihana. The smoky
8  conditions at the restaurant (in which the cooks prepared the meals at the diner's vented
9  tables) also had affected her health. When she called a maintenance crew into clean the
10 hoods over the table to improve their ability to draw away the cooking fumes from the
11 tables, she was chastised by her superiors for spending the money to do so.

12     27.    Despite her illness, she attended a marketing meeting for the restaurant on
13 March 13, 2006. On March 14, 2006, she reported for work at 7:00 a.m., despite the fact
14 that her symptoms had worsened. She was suffering from an inability to eat, vomiting,
15 chest pain, blurry vision, dizziness, numbness in one should, neck and shoulder pain,
16 severe headaches and sinus pain.

17     28.    At or about this time, a cook offered to fix breakfast for her; something he
18 had never offered to do, or had done, for her before. She accepted and ate the meal, and
19 was sick for a week after that. This, coupled with the previous warning that Mr. Mendoza
20 had been putting drugs in her food, led her to belief that the deterioration in her physical
21 health might be related to dangerous substances she had been fed while taking meals at
22 work.

23     29.    Ms. Shin is of the Mormon faith, and had never drunk alcohol, smoked
24 anything, or used illicit drugs. Therefore, she had no experience against which to
25 compare the symptoms she was suffering. However, a friend of hers with a law
26 enforcement background told her that he believed, based on her story and symptoms,
27 that she was being slowly poisoned during this period.

28     30.    Her symptoms continued to worsen, and on March 18, 2006, friends not

associated with her work took her to Palomar Hospital in Escondido. By this time, her vision loss was nearly complete. Rather than treating her physical symptoms, she was sent to a mental health unit for 72-hour observation because of a social worker's concern for her mental state.

31.   While on the unit, a doctor diagnosed her as suffering from depression and prescribed medication, which she began to take. However, when the hospital released her on March 21, 2006, no one there had investigated the basis for her physical symptoms or tried to treat them.

32.   Accordingly, she met with local physicians to seek help for these, and was referred to a dentist for a mouth guard to protect her teeth, which she had begun grinding in her sleep, and to a physical therapist. She also saw a chiropractor, and had begun to slightly improve.

33.   Ms. Shin returned to work on April 6, 2006 and was told that two women on the management team wanted to see her. When she met with them, they told her in an accusing manner (in an apparent reference to her recent hospitalization) that she was "crazy," "mentally crazy." She was deeply hurt and felt wrongly accused, as she had been diagnosed with depression; not any form of psychosis or being "crazy." She asked that she be permitted to leave work, and upon doing so, visited one of her physicians, who told her that she needed to take more time away from the conditions at her job. Accordingly, she requested and was given time off from April 10, 2006 through May 10, 2006.

34.   She subsequently learned that Benihana had initiated a background investigation of her upon her hospitalization, something to her knowledge it had never done before with a current employee.

35.   When she returned to work, she found herself more of an outcast than before. Though she had been given the job of General Manager before her illness, the other management bypassed her and made decisions that should have been made by her. Tasks that were previously hers had been given to other employees.

36.   To compound the sense of isolation, the associate manager at the restaurant, Hisayo Kimura, told Ms. Shin that she (Ms. Kimura) had been told by the corporate office to report everything she observed about Ms. Shin to the corporate office, including her work conduct and behavior.

37.   Shortly thereafter, Ms. Shin observed Ms. Kimura taking actions that would lower restaurant sales and reflect poorly against Ms. Shin. These included falsely telling customers that they could not make reservations because the restaurant was fully booked for the evening, and making customers wait unnecessarily long periods to be seated for a table, causing many of them to leave in frustration.

38.   The sales figures for the restaurant did in fact decline, and Ms. Shin received a letter from the Executive Vice President of Benihana telling her that the company wanted a medical evaluation and assessment of her.

39.   Virtually crippled by stress and insomnia because of her working conditions, Ms. Shin produced a note from her doctor attesting to her condition and requested to be demoted to associate manager so that she would have more appropriate work hours. The demotion was made, and Hisayo Kimura, associate manager, was promoted to General Manager.

40.   Ms. Kimura (the woman that had told Ms. Shin that she was "crazy," "mentally crazy") soon began to find fault with Ms. Shin's performance as associate manager. Discouraged and too ill to defend herself, but worried about losing her job and health insurance, Ms. Shin requested that she be demoted to the non-management job of food server, a request that was granted.

41.   Despite a note from her doctor advising Benihana's management that she suffered from severe insomnia (as a result of the work stress) and that she should not be scheduled to work in the morning shifts, Ms. Kimura began increasingly scheduling Ms. Shin for the opening morning shift as server, and began cutting her hours back to point where her health insurance benefits (which required a 25-hour week minimum) were threatened. She confronted Ms. Kimura about this, and was told that it was for "business

1   reasons," as the restaurant sales were down. However, Ms. Kimura then proceeded to
2   hire three more servers, which flatly contradicted the "business reasons" pretext for
3   scheduling Ms. Shin in the morning and cutting her hours.

4        42.   Getting no relief from the restaurant management, Ms. Shin related the
5   situation to the corporate office on the "Beni Hot Line." She received no relief from that
6   effort, and in October 2007, wrote a letter to the corporate office about the difficult
7   working conditions and poor management at the restaurant. Some of the other
8   employees agree with the statements in the letter, and co-signed it with her.

9        43.   The letter resulted in two corporate employees from Florida coming to the
10  Carlsbad restaurant to investigate the complaints. After some investigation, they
11  requested a meeting with Ms. Shin. Despite having lost her voice at the time from
12  working around the poorly ventilated stove/tables, Ms. Shin, using handwritten notes,
13  and speaking in a whisper at times, told them about ongoing sexual harassment occurring
14  at the restaurant. Despite her condition, the meeting lasted several hours, with one of the
15  corporate employees telling Ms. Shin that it was not responsible for protecting
16  employees from sexual harassment in the parking lot, since it was not owned or managed
17  by Benihana.

18       44.   On October 31, 2007, Ms. Shin, who was still suffering from chronic
19  nausea, insomnia, throat pain, chest pain, and localized pain in other areas of her body,
20  went to see a Workers' Compensation physician, who, after meeting with her, had her
21  transferred by ambulance to the emergency room at Sharp Memorial Hospital. She was
22  prescribed medication for the treatment of anxiety and admitted to the hospital, where
23  she spent some time in the Intensive Care Unit after she began vomiting. She also was
24  treated on the mental health unit, and after a hearing on November 9, 2007, to
25  determine whether she was capable of caring for herself upon release, was discharged
26  from the hospital.

27       45.   Upon release, Ms. Shin requested leave from work from November 2, 2007
28  through December 11, 2007. During this period, she received a letter from Taka

Yoshimoto, Executive Vice President of Benihana, Inc., regarding the background investigation it had conducted of Ms. Shin. She disputed its findings and made a complaint with the Division of Occupational Safety and Health, which responded to her, ordering Benihana to post the response at the Carlsbad restaurant, which was not done.

46.   On December 3, 2007, Ms. Shin was visited by Chuck Evanson from the state Workers' Compensation Office, who, with a Korean interpreter he had brought, inquired about her October 31, 2007 visit to the doctor that had led to her hospitalization.

47.   On or about January 16, 2008, Ms. Shin received a letter from the Division of Occupational Safety and Health. She attempted to follow up on the letter, but was unsuccessful, as it contained a January 15, 2008 response deadline that had passed before she had received the letter.

48.   Ms. Shin returned to work on December 12, 2007. Almost immediately, she was repeatedly called into the manager's office because of purported "customer complaints" about Ms. Shin. She received a written warning after the third "customer complaint." A co-worker called the Beni Hot Line to dispute one of the purported customer complaints, to which she had been a witness.

49.   In the previous four-and-a-half years of her employment at Benihana, she had not been the subject of a single complaint by a customer. She felt that the "complaints" were set up as a pretext for terminating her. On January 10, 2008, Hideki Edward, assistant manager at the corporate office called to discuss the complaints with her.

50.   At about that time, Ms. Kimura left her employment at the Carlsbad restaurant, where she had replaced Ms. Shin as General Manager. Also, at or about that same time, the purported "customer complaints" stopped.

51.   Ms. Shin continued to work at the Carlsbad restaurant, but saw no improvement in conditions there. On September 7, 2008, she encountered two restaurant employees having sex in the restaurant parking lot. She reported it to the

1  manager, who appeared more frustrated with her than the employees. Later that evening,

2  after her shift, Ms. Shin and the other servers went to the kitchen, as was usual, to total

3  their tips and share them with the cooks and other staff. While in the kitchen, one of the

4  kitchen staff approached Ms. Shin, and tracing his hand across her arm, said, "Let's have

5  sex ... in the parking lot." Upset, shaken and frightened, Ms. Shin left and later reported

6  the incident to one of her superiors. Her stress-related symptoms worsened as the result

7  of the sexual harassment against her, and she had to take approximately three days off

8  from work as a result.

9      52.    Shortly after returning, she was told that another "customer complaint"

10 had been made against her and was terminated, with a final employment date of

11 September 29, 2008.

12     53.    Because of the severe emotional and physical distress and consequent

13 illness and related symptoms she suffered as the result of the acts set forth above, Ms.

14 Shin has been unable to engage in commensurate employment.

**V. FIRST CAUSE OF ACTION**

**BASED UPON EMPLOYMENT DISCRIMINATION**

17     54.    Plaintiff realleges and incorporates by reference the allegations set forth in

18 each of the preceding paragraphs of this Complaint.

19     55.    The acts and/or words of Defendant and its agents and employees as

20 alleged herein above constitute employment discrimination against Plaintiff based upon

21 Plaintiff's sex, race and/or national origin. Defendant violated Government Code §

22 12940 by discriminating against Plaintiff because of Plaintiff's sex, race and/or national

23 origin with respect to the terms and conditions of Plaintiff's employment.

24     56.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered

25 and continues to suffer general damages, including, but not limited to, severe emotional

26 and physical distress, and has been unable to engage in commensurate employment, as

27 alleged herein in an amount according to proof.

28     57.    Defendant's conduct, as set forth above, was intentional and malicious and

done for the purpose of causing Plaintiff to suffer humiliation, mental anguish and emotional distress. Defendant's conduct was done with knowledge that Plaintiff's emotional and physical distress would result and was done with wanton and reckless disregard of the consequences to Plaintiff and was despicable, intentional and malicious. Defendant's conduct was done with the knowledge that Plaintiff's emotional and physical distress would as a result increase and was done with wanton and reckless disregard of the rights of Plaintiff and the consequences to Plaintiff. The aforementioned acts of Defendant were willful, wanton, malicious and oppressive and justify the awarding of exemplary and/or punitive damages according to proof.

58.    As a result of Defendant's violation of Government Code § 12940, as alleged herein, Plaintiff are entitled to reasonable attorney fees and costs as provided by Government Code § 12965, et seq.

## VI. SECOND CAUSE OF ACTION
## BASED UPON HARASSMENT

59.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

60.    The acts and words of Defendant as alleged herein above constitutes harassment on account of Plaintiff's sex, race and/or national origin in the form of a hostile working environment and violated Government Code § 12940 by maintaining a hostile work place where such harassment occurred, including harassment by Defendant's supervisors, managing agents and/or employees as evidenced by Defendant's conduct and policies as herein above described.

61.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered and continues to suffer general damages, including, but not limited to, severe emotional and physical distress, and has been unable to engage in commensurate employment, as alleged herein in an amount according to proof.

62.    Defendant's conduct, as set forth above, was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish and

emotional distress. Defendant's conduct was done with knowledge that Plaintiff's emotional and physical distress would result and was done with wanton and reckless disregard of the consequences to Plaintiff and was despicable, intentional and malicious. Defendant's conduct was done with the knowledge that Plaintiff's emotional and physical distress would as a result increase and was done with wanton and reckless disregard of the rights of Plaintiff and the consequences to Plaintiff. The aforementioned acts of Defendant were willful, wanton, malicious and oppressive and justify the awarding of exemplary and/or punitive damages according to proof.

63.    The conduct of Defendant as alleged herein above was despicable, willful, wanton, malicious and oppressive and justifies the awarding of exemplary and/or punitive damages according to proof.

64.    As a result of Defendant's violation of Government Code § 12940 as alleged herein, Plaintiff are entitled to reasonable attorney fees and costs as provided by Government Code § 12940 et seq.

## VII. THIRD CAUSE OF ACTION
## BASED UPON RETALIATION

65.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

66.    The acts and words of Defendant as alleged herein above constitute adverse employment action and/or retaliation against Plaintiff, and Defendant violated Government Code § 12940 by retaliating against Plaintiff because they opposed Defendant's practices as described herein above.

67.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered and continues to suffer general damages, including, but not limited to, severe emotional and physical distress, and has been unable to engage in commensurate employment, as alleged herein in an amount according to proof.

68.    Defendant's conduct, as set forth above, was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish and

emotional distress. Defendant's conduct was done with knowledge that Plaintiff's emotional and physical distress would result and was done with wanton and reckless disregard of the consequences to Plaintiff and was despicable, intentional and malicious. Defendant's conduct was done with the knowledge that Plaintiff's emotional and physical distress would as a result increase and was done with wanton and reckless disregard of the rights of Plaintiff and the consequences to Plaintiff. The aforementioned acts of Defendant were willful, wanton, malicious and oppressive and justify the awarding of exemplary and/or punitive damages according to proof.

69.    As a result of Defendant's violation of Government Code § 12940, as alleged herein, Plaintiff are entitled to reasonable attorney's fees and costs as provided by Government Code § 12965, et seq.

## VIII. FOURTH CAUSE OF ACTION
### BASED UPON INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

70.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

71.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered and continues to suffer general damages, including, but not limited to, severe emotional and physical distress, and has been unable to engage in commensurate employment, as alleged herein in an amount according to proof.

72.    Defendant's conduct, as set forth above, was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish and emotional distress. Defendant's conduct was done with knowledge that Plaintiff's emotional and physical distress would result and was done with wanton and reckless disregard of the consequences to Plaintiff and was despicable, intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish and severe emotional distress. Defendant's conduct was done with the knowledge that Plaintiff's emotional and physical distress would as a result increase and was done with wanton and reckless disregard of the rights of Plaintiff and the consequences to Plaintiff.

1  The aforementioned acts of Defendant were willful, wanton, malicious and oppressive
2  and justify the awarding of exemplary and/or punitive damages according to proof.

3      73.    The aforementioned acts of Defendant were willful, wanton, malicious and
4  oppressive and justify the awarding of exemplary damages according to proof.

5              **IX. FIFTH CAUSE OF ACTION**
6                 **WRONGFUL TERMINATION**

7      74.    Plaintiff realleges and incorporates by reference the allegations set forth in
8  each of the preceding paragraphs of this Complaint

9      75.    Plaintiff was employed by Defendant Benihana.

10     76.    Plaintiff was terminated from her employment by Defendant.

11     77.    Plaintiff's complaints about sexual harassment, hostile working conditions
12 and other problems at her place of employment were the motivating reasons for
13 Defendant to terminate Plaintiff's employment and, as such, the termination violates
14 public policy.

15     78.    As a direct and proximate result of that termination, Plaintiff suffered and
16 continues to suffer general damages, including, but not limited to, severe emotional and
17 physical distress, and has been unable to engage in commensurate employment, as
18 alleged herein in an amount according to proof.

19     79.    Defendant's conduct, as set forth above, was intentional and malicious and
20 done for the purpose of causing Plaintiff to suffer humiliation, mental anguish and
21 emotional distress. Defendant's conduct was done with knowledge that Plaintiff's
22 emotional and physical distress would result and was done with wanton and reckless
23 disregard of the consequences to Plaintiff and was despicable, intentional and malicious
24 and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish and
25 severe emotional distress. Defendant's conduct was done with the knowledge that
26 Plaintiff's emotional and physical distress would as a result increase and was done with
27 wanton and reckless disregard of the rights of Plaintiff and the consequences to Plaintiff.
28 The aforementioned acts of Defendant were willful, wanton, malicious and oppressive

and justify the awarding of exemplary and/or punitive damages according to proof.

80.     The aforementioned acts of Defendant were willful, wanton, malicious and oppressive and justify the awarding of exemplary damages according to proof.

## X. PRAYER

WHEREFORE, Plaintiff prays for relief pursuant to each cause of action set forth in this Complaint as follows, and requests a judgment in her favor:

1. Compensating and making Plaintiffs whole for all earnings, wages and other employment benefits she would have received but for the discrimination, harassment, and wrongful retaliation by the Defendants.

2. For statutory damages;

3. For attorney fees;

4. For an award of general damages in a sum of according to proof

5. For an award exemplary and punitive damages against the Defendants.

6. For costs and reasonable attorney fees; and

7. For such other and further relief as the Court may deem proper and just.


HEWELL LAW FIRM


Dated: September 7, 2010                By: _____

Harold M. Hewell
Attorney for Plaintiff

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**FILED**

**SEP 07 2010**

**BY FAX**

**CLERK U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**BY** _____ **DEPUTY**  ~TB

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JUNGRYEA SHIN, an individual, | BENIHANA INC., a Delaware corporation, |

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Harold M. Hewell, HEWELL LAW FIRM, 105 West F Street, Second Floor,
San Diego, California 92101, (619) 235-6854, (888) 298-0177 (f)

Attorneys (If Known)

**'10 CV 1862   H   WVG**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities – Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus – Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities – Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332(a) - Diversity

Brief description of cause:
Complaint for harassment, discrimination, retaliation, emotional distress and wrongful termination

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**  To be determined.

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   September 7, 2010      SIGNATURE OF ATTORNEY OF RECORD  _[signature]_

**FOR OFFICE USE ONLY**

RECEIPT # 17749   AMOUNT $350   9/8/10 BY   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____



```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS017749
Cashier ID: bhartman
Transaction Date: 09/08/2010
Payer Name: JANNEY AND JANNEY ATTY. SVC.
-----------------------------------
CIVIL FILING FEE
  For: SHIN V BENIHANA
  Case/Party: D-CAS-3-10-CV-001862-001
  Amount:       $350.00
-----------------------------------
CHECK
  Check/Money Order Num: 297102
  Amt Tendered:  $350.00
-----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```